### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **NATHANIEL-BISHOP W. B.,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | **No. 1:20-cv-00323-JAW** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| ***Acting Commissioner of Social Security,***[1] | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks remand on the basis that the ALJ's assessment of his residual functional capacity (RFC) is unsupported by substantial evidence.  *See* [Plaintiff's] Statement of Specific Errors ("Statement of Errors") (ECF No. 19).  I discern no such error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of autism spectrum disorder, learning

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

disorder, and anxiety disorder, Finding 2, Record at 18; that he had the RFC to perform a full range of work at all exertional levels, could understand, remember, and carry out simple and routine instructions for two-hour intervals over the course of an eight-hour workday and 40-hour workweek, could tolerate brief, superficial, and occasional interaction with co-workers and supervisors, could not perform work that required interaction with the general public as a function of the job, would perform best in a job that was independent in nature as opposed to tandem or team-based work, could adapt to simple and routine changes in the work environment, had to avoid concentrated exposure to noise, and could not perform work that required reading as a function of the job, Finding 4, *id*. at 20; that, considering his age (19 years old, defined as a younger individual, on the date he applied for SSI benefits, July 12, 2017), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 25; and that he, therefore, had not been disabled from the date of his SSI application, July 12, 2017, through the date of the decision, May 30, 2019, Finding 10, *id*. at 26.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work.   20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.   The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.   *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

## A.  The ALJ's Treatment of Medical Expert Opinions

### 1.  Background

The plaintiff underwent a psychological examination by Nadir Behrem, Psy.D., in November 2017.  *See* Record at 286.  Dr. Behrem detailed his observations from the examination in a report and summarized his findings as follows:

> In terms of [the plaintiff's] mental health, he demonstrates evidence of pervasive developmental disorder not otherwise specified.  Nevertheless, he is able to communicate with others.  He is able to remember information and learn from experience.  He is able to understand and follow simple but not complicated tasks. He is likely to become distracted easily in a work setting and fail to complete certain tasks, especially when required to do more than one thing at a time.  The [plaintiff] is able to interact appropriately with members of the public, coworkers, and superiors.  He is able to demonstrate good judgment in work-related tasks, although he would perform best in routine and repetitive tasks.  Due to pervasive developmental disorder not otherwise specified, the [plaintiff]'s ability to shift from one task to another is impaired.  He would have difficulty adapting to changes in workplace routine.

*Id.* at 291.

Later that same month, agency nonexamining consultant Brian Stahl, Ph.D., evaluated the plaintiff's disability claims at the initial level.  *See id.* at 64-73.  Based on his review of the then-available record – including Dr. Behrem's report – Dr. Stahl determined that the plaintiff suffered from the medically determinable impairments of autism spectrum disorder and learning disorder,

both of which were severe.  *See id.* at 67.  Dr. Stahl opined that the plaintiff had the mental RFC to understand and remember simple instructions and tasks, work in two-hour blocks performing simple tasks over the course of a normal workday/workweek, work with co-workers and supervisors but not with the general public, would do better in employment with limited interactions, and could adapt to simple changes.  *See id.* at 70-71.  Dr. Stahl described Dr. Behrem's findings as "consistent with" his own, stating that he had "incorporated" them into his mental RFC assessment.  *Id.* at 69.

After the plaintiff's claims were denied at the initial level, another agency nonexamining consultant, Thomas Knox, Ph.D., reviewed the plaintiff's claims at the reconsideration level in March 2018.  *See id.* at 75-85.  Dr. Knox opined that Dr. Stahl's findings were consistent with the record evidence – including evidence submitted for the first time on reconsideration – and assessed the same mental RFC as Dr. Stahl.  *See id.* at 80-84.  Like Dr. Stahl, Dr. Knox found Dr. Behrem's findings "consistent with" his own and indicated that he had "incorporated" them into his mental RFC assessment.  *Id.* at 81.

In July 2018, the plaintiff underwent another psychological evaluation, this time by Cara Orton, Psy.D., to assess his eligibility for services provided by the State of Maine for adults with disabilities.  *See id.* at 334-38.  Dr. Orton summarized her impressions as follows:

> [The plaintiff] is a 20-year-old man with a history of early language delay and diagnosis of Autism Spectrum Disorder in approximately 2nd [or] 3rd grade.  He received special educational services following his diagnosis and graduated from [high school] where he completed a life skills/vocational program.  He moved to Maine with his family about 2 years ago and plans to remain living with his parents for the foreseeable future.  He currently requires assistance with many instrumental activities of daily living.  He is not employed, but has a primary goal to gain employment in the future. . . .  Results on a measure of adaptive function indicate significant impairments across domains of communication, daily living skills, and social skills, resulting in an adaptive composite in the Low, mild deficit range.  [The plaintiff]'s current presentation and performance appears to be consistent with previous findings and continues to support a diagnosis of Autism Spectrum

> Disorder based upon early language delays, significant impairment in social communication and interactions, sensory sensitivities, and cognitive rigidity.  He will benefit from services to address impairments in adaptive function and to maximize level of functional independence.

*Id.* at 337.

In her decision, the ALJ assessed a mental RFC that largely tracks Drs. Stahl's and Knox's opinions.  *Compare* Finding 4, *id.* at 20 *with id.* at 70-71, 80-83.  She explained,

> I am . . . persuaded by [Drs. Stahl's and Knox's] assessments.  The consultants outlined limitations from the [plaintiff]'s impairments that are generally consistent with those outlined within the [RFC].  Their opinions are consistent with the overall weight of the evidence of record, including the relatively minor abnormalities on diagnostic studies, examinations, the [plaintiff]'s treatment history showing improvement, and his largely intact activities of daily living . . . .  Although these opinions were rendered several months ago, the evidence at the hearing level, including more recent examinations, showed that the [plaintiff]'s impairments have generally remained stable.  Their opinions, therefore, remain an accurate reflection of the [plaintiff]'s most restrictive limitations since his alleged onset date.

*Id.* at 24.

The ALJ also noted that she was "persuaded by Dr. Behrem's evaluation and assessment[,]" adding that, although his opinion was "somewhat vague," it was "generally supported by the record as a whole[.]"  *Id.*  She explained that she had included "mental limitations in the RFC" that were "generally concordant with [Dr. Behrem's] opinion."  *Id.*  She similarly found Dr. Orton's opinion "generally supported by the record as a whole, including relatively minor abnormalities on h[er] examination and other examinations as well as the [plaintiff]'s treatment history and activities of daily living."  *Id.*  She explained that, "[f]actoring in [the Orton] opinion," she had limited the plaintiff to "work with only simple and routine changes and limited social interactions."  *Id.*

## 2.  The Plaintiff's Argument

The plaintiff asserts that the ALJ committed reversible error by failing to account for "two crucial limitations" identified by Dr. Behrem; namely, (i) that he was likely to become distracted easily in a work setting and fail to complete certain tasks and (ii) that his ability to shift from one task to another and adapt to changes in work routine was impaired.  Statement of Errors at 5-8.  He contends that while the ALJ and Drs. Stahl and Knox all purported to give Dr. Behrem's conclusions significant weight, they failed to incorporate these "crucial limitations" into their mental RFC assessments or provide "any explanation for failing to do so."  *Id.* at 5, 8.

The plaintiff further argues that these omitted limitations are buttressed by Dr. Orton's opinion, which Drs. Stahl and Knox did not see.  *Id.* at 8-11.  He contends that the ALJ failed to recognize the significance of Dr. Orton's conclusion that he met the eligibility criteria for state adult developmental services and that the ALJ was not qualified to determine that Drs. Stahl's and Knox's "opinions would not have changed had they reviewed [Dr. Orton's] evaluation." *Id.* at 9-11.

I am not persuaded.

Although the plaintiff describes Dr. Behrem's findings as limitations, Dr. Behrem did not purport to assess specific work-related mental limitations and his findings were – to borrow the ALJ's phrasing – somewhat vague.  *See* Record at 286-91.  As such, he cannot be said to have offered an opinion as to the plaintiff's mental RFC.  *See, e.g.*, *Russell B. v. Berryhill*, No. 1:17-cv-00418-JHR,  2018 WL 5258615, at *2-3 (D. Me. Oct. 21, 2018) (noting that an agency examining consultant's description of a claimant's difficulties with sustained attention was not a mental RFC opinion when the examining consultant did not purport to assess specific work-related limitations arising from those difficulties); *Sheldon v. Colvin*, Civil No.

2:13-CV-315-DBH, 2014 WL 3533376, at *5 (D. Me. July 15, 2014) (noting that, although agency examining consultants had "discuss[ed] the [claimant]'s work capabilities," their reports were not RFC opinions to the extent that they had "employ[ed] qualifiers such as 'may' and 'likely' and d[id] not always translate actual or expected difficulties into specific limitations").  Instead, it was Drs. Stahl and Knox who were tasked with reviewing Dr. Behrem's report, along with other evidence, in order to craft RFC assessments.  *See Allen-Ward v. Berryhill*, No. 1:17-cv-00227-JDL, 2018 WL 1907953, at *7 (D. Me. Apr. 23, 2018) (rec. dec., *aff'd* June 29, 2018) (role of agency nonexamining consultant "was to review the available record, including any examining consultants' reports, and craft an RFC opinion to aid the ALJ in assessing the [claimant]'s RFC").

The plaintiff invites me to second-guess Drs. Stahl and Knox and conclude that they failed to adequately incorporate Dr. Behrem's findings regarding the plaintiff's attentional and adaptational deficits into their RFC opinions.  I decline to do so where Drs. Stahl and Knox (i) accurately summarized Dr. Behrem's findings that the plaintiff was "[l]ikely to become distracted easily in a work setting and fail to complete certain tasks[,]" that his "[a]bility to shift from one task to another is impaired[,]" and that he "would have difficulty adapting to changes in workplace routine[,]" Record at 65-66, 77-78; (ii) specifically stated that their opinions were consistent with and incorporated Dr. Behrem's findings, *see id.* at 69, 81; and (iii) included attentional and adaptational limitations in their mental RFC assessments that are not facially inconsistent with Dr. Behrem's findings, *see id.* at 70-71, 82-84.   In such circumstances, I cannot, as a layperson, conclude that Drs. Stahl and Knox ignored or misconstrued Dr. Behrem's findings. *See Russell B.*, 2018 WL 5258615, at *3 ("Nor is it so plain that [the examining neuropsychologist's] recommendations clash with the RFC opinions of Drs. Stahl and Knox that

I, as a layperson, can conclude that Drs. Stahl and Knox either ignored or misconstrued [the examining neuropsychologist's] report despite its inclusion in the record available for their review." (footnote omitted); *Allen-Ward*, 2018 WL 1907953, at *7 ("[I]t is not self-evident that the ALJ's restriction to understanding and remember simple instructions on a sustained, competitive basis fails to capture [the examining consultant's] repetition/reinforcement finding, which Dr. Knox expressly acknowledged, and the [claimant] identifies no specific limitation that the ALJ should have included based on the need for repeated instructions." (citation omitted)).[3]

The plaintiff also likens this case to *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *5 (D. Me. Sept. 19, 2016), in which the court faulted Dr. Stahl for failing to explain why he deemed a claimant capable of interacting with co-workers and supervisors despite crediting an examining consultant's opinion that the claimant would have difficulty with social settings and interacting with others. *See* Statement of Errors at 7. The plaintiff contends that Drs. Stahl and Knox similarly failed in this case to explain how the evidence – in particular Dr. Behrem's findings – supported their conclusions that he could adapt to simple workplace changes. *See id.*[4]

Although the plaintiff is correct that Drs. Stahl and Knox were conclusory in finding that he was "able to adapt to simple changes[,]" Record at 71, 83-84, *Parker* does not stand for the proposition that an agency nonexamining consultant's limited explanation justifies remand on its

---

[3] For this same reason, I am not in a position to conclude, as the plaintiff suggests, that Drs. Stahl and Knox erred in relying on his activities of daily living in determining that he was capable of working in two-hour blocks on simple tasks. *See* Statement of Errors at 6; Record at 71, 83. The plaintiff merely points to his and his mother's function reports – both of which were reviewed by Drs. Stahl and Knox, *see* Record at 66, 78 – and asks the court to draw a different conclusion. *See* Statement of Errors at 6. He also suggests that Drs. Stahl and Knox (and in turn, the ALJ) placed undue emphasis on his IQ score, citing to the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) (*DSM-V*) to support his position. *See* Statement of Errors at 13. Once again, however, I cannot, as a layperson, interpret the *DSM-V* and second-guess Drs. Stahl and Knox.
[4] Undermining the plaintiff's argument on this point is his own testimony before the ALJ that he could handle "small" changes to workplace routine. Record at 48-49.

own.  Rather, Dr. Stahl's failure to explain his assessed limitations in *Parker* was a single part of a larger breakdown in the information chain between him, the examining consultant, and the ALJ. *See Parker*, 2016 WL 4994997, at *5-6 (also noting that (i) Dr. Stahl had not fully captured all of the examining consultant's findings, (ii) Dr. Stahl's opinion was internally inconsistent, (iii) the ALJ had omitted some of the limitations assessed by Dr. Stahl despite purporting to give his opinion great weight, and (iv) the ALJ had purported to credit two contrary opinions); *see also, e.g.*, *Allen-Ward*, 2018 WL 1907953, at *8 (describing *Parker* as involving "fatal breaks in the information chain"); *Christine C. v. Saul*, No. 2:19-cv-00266-GZS, 2020 WL 3047365, at *5 (D. Me. June 7, 2020) (rec. dec., *aff'd* June 23, 2020) (noting that remand in *Parker* was based on "several collective errors").

There are no such fatal breakdowns or cumulative errors in this case.  Drs. Stahl and Knox made clear their awareness of Dr. Behrem's findings, and there is no self-evident tension between those findings and either their assessed limitations or those of the ALJ.  *See Sarah B. v. Saul*, No. 2:19-cv-00267-LEW, 2020 WL 2549250, at *7-8 (D. Me. Apr. 23, 2020) (rec. dec., *aff'd* May 18, 2020) (distinguishing *Parker* on a similar basis); *Allen-Ward*, 2018 WL 1907953, at *7-8 (same).[5]

The plaintiff also misses the mark in suggesting that Dr. Orton's evaluation undermines Dr. Stahl's and Knox's opinions and the ALJ's decision.  *See* Statement of Errors at 9-10.  That Dr. Orton found the plaintiff met "the eligibility criteria for Adult Developmental Services in the State of Maine" because of his autism spectrum disorder diagnosis is simply immaterial to the question of whether he is disabled under the Social Security Act.  Record at 337; 20 C.F.R.

---

[5] To the extent the plaintiff alleges an error in the ALJ's evaluation of Dr. Behrem's findings that independently warrants remand, *see* Statement of Errors at 8, any error is rendered harmless by the ALJ's adoption of the Stahl and Knox opinions, s*ee Allen-Ward*, 2018 WL 1907953, at *8.

§ 416.920b(c)(1) (providing that "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled under" the Social Security Act and that the agency "will not provide any analysis about how [it] considered such evidence in [its] determination or decision").  Accordingly, the ALJ was not obligated to recognize "the impact of this determination[,]" as the plaintiff suggests.  Statement of Errors at 9-10 & n.2.

The plaintiff's argument that the ALJ was "not qualified to interpret Dr. Orton's findings" or "determine that [Dr. Stahl's and Knox's] opinions would not have changed had they reviewed" Dr. Orton's findings, Statement of Errors at 11, is similarly without merit.  As an initial matter, this court has repeatedly held that an ALJ is competent to assess the materiality of later-submitted evidence.  *See, e.g.*, *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011).  Moreover, at oral argument, the plaintiff asserted that Dr. Orton's opinion was substantively the same as Dr. Behrem's, which means, *ipso facto*, that Dr. Orton's opinion did not present any material new evidence that would have necessarily changed Drs. Stahl's and Knox's opinions when they both had reviewed Dr. Behrem's opinion.  *See O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (claimant's failure to demonstrate why evidence unseen by medical experts "would necessarily have altered their opinions in a manner favorable" to him was fatal to his bid for remand on that basis).  Indeed, Dr. Orton herself confirmed the consistency of her findings with the plaintiff's previous medical assessments.  *See* Record at 337.  The ALJ, thus, supportably found that Drs. Stahl's and Knox's opinions remained "accurate reflection[s]" of the plaintiff's limitations when even "more recent examinations" unseen by them indicated that the plaintiff's "impairments have generally remained stable."  *Id.* at 24.

10

In summary, the plaintiff has failed to demonstrate that the ALJ erred in relying on Drs. Stahl's and Knox's opinions.  Because the ALJ's decision is consistent with those opinions, it is supported by substantial evidence.

### B. The ALJ's Reliance on Other Evidence

The plaintiff also faults the ALJ for relying on other evidence.  *See* Statement of Errors at 11-14.  He contends that the ALJ erroneously relied on his "course of treatment, activities of daily living, [and] appearance and demeanor at hearing" in assessing his limitations.  *Id.* at 11.  However, as the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors (ECF No. 21) at 10, the ALJ was required to consider this evidence, *see id.* § 416.929(c)(3)(i), (iv)-(v) (providing that in evaluating a claimant's symptoms, the agency will consider, among other things, the claimant's daily activities, medications, and treatment history); 20 C.F.R. § 416.945(a)(3) (providing that the agency will assess a claimant's RFC "based on *all* of the relevant medical and other evidence" (emphasis added)).  Moreover, the ALJ did not rely exclusively on this other evidence to assess the plaintiff's RFC, but rather supportably relied on the opinions of Drs. Stahl and Knox, which fully support her RFC assessment.[6]

At bottom, the plaintiff primarily argues that the ALJ should have drawn different conclusions from the evidence she cited.  "That the record could arguably support a different

---

[6] To the extent that the plaintiff argues that permitting an ALJ to consider a claimant's demeanor at hearing when assessing his limitations would set a dangerous precedent that claimants who are "able to follow along and answer questions at their hearing do[] not have mental limitations that would prevent them" from performing simple work, Statement of Errors at 14, I am not persuaded.  As discussed above, the ALJ did not rely exclusively on her impressions of the plaintiff at the hearing to determine his RFC but, rather, cited considerable additional evidence, including the expert opinions of Drs. Stahl and Knox.  *See Thomas v. Barnhart*, No. Civ.A. 01-11577-DPW, 2003 WL 1716808, at *14-15 (D. Mass. Mar. 19, 2003) (noting that where an ALJ "considered each and every available piece of evidence in" a claimant's medical history "and made a reasoned determination on the basis of the evidence that" the claimant was not disabled, the ALJ's "pertinent observation[s]" regarding the claimant's appearance and demeanor at hearing did "not undermine an otherwise valid analysis" and were an "appropriate reflection[] of his role as finder of fact"); *see also, e.g., M. Jeanie D. v. Saul*, No. 2:19-cv-00193-GZS, 2020 WL 1672784, at *4 (D. Me. Apr. 6, 2020) (rec. dec., *aff'd* June 4, 2020) (a credibility determination by an ALJ who, *inter alia*, "observed the claimant" and "evaluated his demeanor" is "entitled to deference, especially when supported by specific findings" (citation and internal quotation marks omitted)).

conclusion[,]" however, "does not entitle the plaintiff to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein." *Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *5 (D. Me. Dec. 12, 2020) (rec. dec., *aff'd* Jan. 7, 2021). The only true error – as opposed to difference in opinion – the plaintiff points to in the ALJ's analysis is that she stated that he underwent "psychological treatment in 2018 for autism, anxiety, learning disability, and pervasive developmental delay" but cited a record that does not show as much. *See* Statement of Errors at 14 (citation and internal quotation marks omitted); Record at 22 (citing Record at 314-15). Nevertheless, the plaintiff's bid for remand on this basis fails. He does not explain how the ALJ's misstatement prejudiced him, and the error appears to be in his favor. *Cf. Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) (noting that a claimant may not obtain remand on the basis of an ALJ's finding that "is more favorable than the evidence would otherwise support") (footnote omitted).

### C.  The ALJ's Reliance on VE Testimony

The plaintiff lastly argues that the ALJ erred in relying on the testimony of the VE because she posed questions to the VE predicated on her flawed RFC determination. *See* Statement of Errors at 14-15. The success of this argument hinges on that of the plaintiff's earlier arguments that the ALJ erred in determining his RFC. Because, for the reasons discussed above, the plaintiff's challenges to the ALJ's RFC findings fall short, this derivative argument likewise fails. *See, e.g.*, *Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *4-5 (D. Me. Mar. 28, 2019).

### II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge